Dawn L. Best v. William D. Johnson Good morning, Your Honor. I'm sorry. Afternoon, Your Honor. Good afternoon. All right, Mr. Wade, I hope you're not too dissatisfied with the news from the circuit yesterday. Your Honor, this is a really rare occasion. I was really happy with the circuit yesterday. We'll see about today. May it please the Court. In 1980, in the Jeffries case, Your Honors quoted a United States Supreme Court case as having held that a company rule is invalid which singles out a subclass of women for disparate treatment. In that case, the Supreme Court was referring to a company rule that disqualified women with children for employment but all men were eligible for employment. And then in the Jeffries case, it was discrimination against the class of black women. But the point was it is unlawful under the sex discrimination laws to take a particular subset of a class of women and say that they are treated differently from all men. Your Honor, this case happens to be older women, but it wouldn't make any difference, Your Honor, if it were, for example, if we had a company rule that said all men are eligible for employment but only women who do not wear glasses are eligible for employment. It wouldn't have been any different. That's the rule that the Supreme Court has, and that's the rule that the Jeffries case stands for from this circuit. Where did the district court err? It seems like it would only be in the instructions. Your Honor, I can't hear in my left ear, and I forgot my hearing aid. I also mumble, so we have a different combination here. Where did the district court err? It seems to me that the jury had all this evidence presented to it, and so the only issue would be whether they were properly instructed. Would you agree? I do agree with that, Your Honor. We've all looked, and you've looked again at the jury instruction conference, and it seems to me that you did not insist on a jury instruction that would have combined the two, as you're saying. I interpret the transcript. The group agreed, Judge Biggers and the rest of you, that we wouldn't say anything about age, and would just let the jury deal with the evidence as it was presented. Is that a fair characterization? No, Your Honor, it's really not fair, and she did a really good job in her brief of saying that, but let me give the court the pages. Let me give the court the exact pages. I went on and on in the jury instruction conference about how we were entitled to that instruction. It begins on page 1103 and ends on page 1108 of the record. I talked about it in a lot of other places, and I'll go into them, but as far as the jury instruction conference, the court on page 1067 of the record took note that both sides had filed supplemental instructions. There's a local rule you're supposed to file in 14 days. There's also a local rule you don't file them with a clerk. You send them by e-mail to the judge. That's a local rule that we have. It's probably not a good practice, but that's the rule. And so I noted to the court that I sent you this instruction by e-mail and asked leave to file it, and the court took note of that on page 1067. They did the same thing on another instruction that they wanted. And then when we got into the jury instruction conference, Your Honor, Judge Biggers started going through various instructions that he would take up and discuss various instructions, column by number. He went through all the plaintiffs, and he asked about the interrogatories to the jury, and then he took up the defendants. And at the very end of the defendants' instructions is I started arguing on page 1103 about why we were entitled to this instruction. And it's in writing. Instruction is requested in writing. P14, I believe it is, and it's in the record at P14. But do you waive it at the very end? Ma'am? I'm concerned that you may have waived the request at the very end of the jury charge conference. On page? At 1106, no, 1107. I'm sorry. You say, here's the problem. It says you must disregard any evidence related to age. But I just don't believe that's correct, Your Honor, in view of the fact that discrimination against older women is sex discrimination. So those last two, I don't have a problem with the first two sentences. It's the last two sentences that are in error. The first two sentences are okay. This is you talking to the judge and saying why you don't like the charge as constituted, or do you think that that's not the key part of the exchange? Your Honor, here's a problem I have with this. I looked at this, and I couldn't find in the record the defense instruction that we're talking about here. I don't know what the problem was, but I couldn't find what. So you don't think this waives your argument? Because the court says, okay, what if we just amend this and say the only claim you're deciding is whether to discriminate on the gender. Do you agree with that? And you say, yes, sir. I do, because here's the issue. Here's the problem. They filed a motion to strike the jury demand on the age discrimination. We opposed that because we said age and sex are intertwined. And we argued in there about sex plus, you know, sex plus age. That's in our opposition to their motion. But the court had clearly ruled that I'm going to decide age. In other words, there's no age claim here. I'm going to decide age. When we submitted our injury instructions, he had not so ruled. So my instructions said age and sex. So I don't know what. I couldn't find what instruction we're talking about here. Maybe we could. Okay, so you don't think that's the relevant time where you asked for the gender to include age. You think that's a little earlier. At the very last, after he finished the defense instructions or was on the last defense instruction, we never took up. He said we're going to take up this instruction that you proposed in writing. I believe it's P14, saying discrimination against older women. He said we're going to do that, but he never did mention that again. And then I mentioned it after all the defense instructions were passed on. So when is the best time where you're, like, waving your hands before the judge, saying, Your Honor, we can't go charge the jury because you still haven't ruled on my P14 yet? When is that? Let me get the page. Let me see if I can turn to it. I've got it written down, 1103. Okay. Let me see if that's right. We can go check it out if you think that's where it is. 1103. 1103, 1104. Here's what I said on 1104. One way you can discriminate against gender is to discriminate against older women. I mean, under the interpretation the defendant's given, it's perfectly okay. They would adopt a government rule. We're not hiring any women over 50. And they would, according to them, that would be perfectly legal. But it's not legal. It's a violation of Title VII. And that instruction, and I'm referring to some instruction the defendant has submitted, as I say, I had trouble identifying what we're talking about. That instruction would have allowed us to tell the jury otherwise. And then she chimes in and argues that, well, that rule doesn't apply in age cases. That's only in sex and race cases. But that's where we argued about it. Well, counsel, you argue about it there, and just two pages later, or whatever it is, three pages later, the part that Judge Elrod led first, I may be wrong, but it seems to me you may be talking about Defendant's Instruction VII at that stage as opposed to P14. But it's the same point. What is the jury going to be told about age plus sex? And the court says, we just amend this, even if it's VII on the defense side and not P14. But it's saying, what are we going to tell the jury about this very question of how to combine the two categories? What if we just amend this in the first two sentences and everybody would agree with the only claim you're deciding, you, the jury, in this instruction, and another instruction can't be inconsistent with that. The only thing that is being given to you, jurors, is to decide one category of discrimination. And what you seem to be saying is, I have P14 in my hip pocket, and that needed to be introduced, which would be directly contrary to what everybody disagreed to on whatever instruction this was. That's a question, by the way. It may sound like a statement. But give me your response to that characterization. Your Honor, I'm not going to fumble around and try to find the pages. But here's the substance of what was going on when you look at the instructions. Once the court ruled that I decide the age issue, I had to agree to take out. I mean, I wasn't going to be in contempt of court to say, Your Honor, you know, you've already ruled that age doesn't go to the jury. But I had to take out those portions in the instructions that referred to an age discrimination claim. I had to do that because age was not going to the jury. So that's what we were talking about. So I was trying to separate what the court had ruled, that age is not going to the jury, sex was going to the jury, but we have to couple that with an instruction that if they discriminate against older women, then that's sex discrimination. And that's the point that I think is clear when you read all of that colloquy and come to the end of it. In addition to that, Your Honor, once that juror, I guess the final time or the time it may have been most clear, when that juror came back, it wasn't the juror that came back. The foreman came back and said, We have a juror here that she's considering the age or whatever. That's Your Honor's part. She's considering the age. And so when the juror did that, I told the court I need to see the court. And he said, Well, I'll see you in a minute or whatever. I couldn't say it in front of the jury. Then I went back to Chambers and again requested the instruction in Chambers. And I read it that this is the instruction that we want while the jury's deliberating. And then the court refused it. So they refused again at that time after I'd requested it. And it was at the end. We still haven't found in this first part we've looked at that the district judge actually refused it over an assistance by you. Let me say this. Here's what happened. I argued. She argued. And he never ruled. He just said, I'll see. I'll be out with the charge. But I couldn't make him rule. We argued. They argued. And then he said— Are you talking about in this pages 1103 to 1167? I'm talking about the end of the charge. Let's see. Let me see what page. It's the very end of the charge. Probably 1108. Let me see. You'll see that we both argue. And then the court says, all right, I'll see you in the courtroom or something to that effect. I've heard your argument. And then he gave the instructions. Your Honor's correct. He should have ruled one way or another. Right. But you could make the court rule. How could I, Your Honor? I mean, you're a very experienced trial lawyer, very experienced with these particular courts. You're very, very experienced. And so if the judge hasn't ruled on something that you need a ruling, you can stand up and say, I need a ruling on this right now before we charge the jury. I tried that with Judge Keedy one time, and here's what he said. I got your ruling reserved. Well, at least you get it that you've done everything you can. I thought I did, Your Honor. I can't be—I mean, when the judge says, I'll see you in the courtroom, then he's made it clear to us that he's going to give his charge. And, of course, technically under Rule 51, that wasn't followed. But, I mean, I don't feel like I can when the court says, well, I'll see you in chambers. We've made our arguments. I mean, I think I said, I'll see you in the courtroom. Well, it's also a busy time of trial, and so the court may not remember that they haven't technically ruled on Number 14. I'm not trying to suggest what the court did here. So that's why you need to give them a reminder. You forgot, Your Honor, to rule on 14. And so I'm just— So assuming we agree with you on the law, but—just assuming argument over that, but we don't think that you demanded it, what result on that claim? To me, it's a plain error because the whole thing was they did have one woman they hired at 41. That was the whole heart of the case. They could say we did hire a woman to be a district manager, but she was 41 years old. She was substantially younger. At that time, they'd never had another woman. But to me, Your Honor, I just—when Your Honor reads the whole— when you bear in mind the fact that the court has ruled that age is not going to the jury, I do not believe it's a good trial practice to go back there and argue to the judge that age is going to go to the jury. He's ruled that it's not going. The only thing you can do is to say that sex is going to the jury, but that should be coupled with an instruction that discrimination against older women is a form of sex discrimination. And I just don't—I really don't feel like I could have done anything more than what I did. Counsel, I don't know if there's anything else you can argue. Why don't you tell us about the Allen charge and what he wanted to do? Well, let me suggest again, Your Honor, at the very end of the transcript—this is something that is really easy to find because it's at the very end of the transcript, so it's easy to find, but it's very complicated about what happened. So let me take up, if I could, at the very end. If Your Honor starts on page 1136 of the record, it's very complicated with a colloquy between the judge and the juror and everything. But let me take up with the final second of the second Allen charge after the jury come back the second time. And the judge asked the jury—this begins on 1143 of the record. The judge asked the jury about, do you think we can reach a verdict or something to that effect? And the foreman says, well, they get equivocal answers. One says yes, one says no, one says maybe. They get equivocal answers. And then the foreman points out that we have a juror who is trying to decide your part. Your part is the age part, and she's trying to bring that into it. That's basically what the juror says. At that point, the court then starts into an Allen charge. And I might point out, he never gave us a semi-Allen charge. It's not a little Allen charge. But he starts into an Allen charge, and when he gets to the part of it that said, if you can do this without violence to your conscience, I guess it was because of the word violence that struck the juror. And then he reprimanded the juror. Don't be laughing, or you're laughing. This is not punny in some of that effect. But he reprimanded the dissenting juror. And after he reprimands her—this is on page 1143 of 45—then the next thing he says to them is that you can eat, but it'll take about an hour to get here, or you can not eat. That's the next comment that he makes. And it's 7 o'clock at night. You can either not eat or you could eat, but it'll take an hour to get here. And then he comments that we could spend five minutes now and be done with this case, or we could spend hours or weeks later and not be done with it. He makes that type of Allen charge and sends them back for further liberations. That's the point. So that juror was—how could she be anything but coerced? Because she's the very juror who was singled out as not voting for the jury verdict the first time. And then she's singled out by the foreman the second time that she's not following the court's instructions because the court has said age is for the court, not for the jury. So she's being singled out the first time. And then she— And then the judge reprimanded her. And then—well, I'm not—you know what? I didn't see her laugh, frankly, Your Honor. But, I mean, the court reporter wrote down she laughed, so I take it she laughed. No, but that goes to your point that she's being singled out for a third time. Right, right. She's being singled out for a third time, and it's 7 o'clock at night. And here are the alternatives. You can either eat in an hour or you can not eat. Those are your alternatives. And we can do this in a few minutes. Your time is up, but what's your best case? My best case is the juror was coerced. No, your best law case of the law. What's your best case?  Okay. Thank you, Your Honor. Thank you. Good afternoon. May it please the Court. Tricia Roloffs on behalf of Defendant Appellant, Tennessee Valley Authority. Unless the Court would like to hear otherwise, I'll focus my arguments on some of the points that Mr. Wade addressed in his principal argument. With respect to the sex plus age jury instruction, Appellant is citing page 1067 as the point when he preserved the request for the jury instruction. That happened when the Court was ruling on TVA's directed verdict, and the Court specifically said, we will take this up in the charge conference. Mr. Wade did not take that issue up in the charge conference. There was a question about where TVA's limiting instruction was. That is found at page 674 in the record. And Judge Southwick, as you mentioned, plaintiff's instruction that it submitted, which is found on page 686, was directly in contrast to TVA's instruction. So the Court could really only give the jury one of those instructions. Was that the instruction you would say that Judge Biggers was talking about in this exchange on 11-345? Yes, that was on page 11-03 to 11-07. Well, if the Court could only give one, and the Court's already decided to give the defendant, then why did they have to go back and object? Because it's clear that if you're giving the other, you're not giving his. Well, they did not object. They agreed to it. He said, yes, age has to come out of that. We agree with that, Your Honor. If the Court is going to take age. But still, age could come out of that, and the Court could still say that age, discriminating against older women, is a form of sex discrimination. Yes, I think that. That's what the jury should have been instructed, isn't it? No, Your Honor, I don't think that the jury should have been instructed. I think it would have been confusing to say, on the one hand, age can't come in, but on the other hand, you consider discrimination against older women. That's exactly how it works. It's not a separate age claim, but it is a factor in whether you're discriminating against women, and older women are particularly discriminated against and has been recognized throughout the literature. Your Honor, I respectfully disagree that that has been recognized throughout the literature. The Jeffries case, the case on which the appellant relies, is focused on the statute of Title VII and the language of Title VII, which lists all the protected categories and specifically uses the word or. And the reason that the Fifth Circuit decided the Jeffries case in that manner is because race and sex are both protected categories under that statute, which is Title VII. And Jeffries does not govern this case. Were the court to rule that sex plus age is a separate protected characteristic, that would be an extension. You'd be the first circuit court to rule that. And this court should not rule that. That is judicial legislation. Congress has already passed a separate statute, the ADEA, that protects age. We would not be the first circuit. The Eighth Circuit has recognized it. The Eighth Circuit, I think Your Honor is referring to the Douchette case, and that was based on the Minnesota Human Rights Act, which is more of a super statute that includes all the protected classes in one statute. So in that case, the particular statute has gender and age both as a protected characteristic. But it is a type of sex discrimination, so it doesn't have to be a special separate claim. It is a form of sex discrimination. Your Honor, I respectfully disagree. I don't think even if it is a form, it's not recognized by Congress. The court can't create rights that aren't otherwise there. It's not creating the right. It's still sex discrimination. That's the right. But it manifested itself evidentially through the fact that you put the women out to pasture when they, you know, at a certain place. Well, I think it did not manifest itself evidentially in this case. There was no specific evidence in this case related to older women at all. If anything, the evidence was that the decision-maker, Ban Wardlaw, promoted both men and women of all different ages. And so that analysis wouldn't apply in this case. But going back to Your Honor's point, Congress, again, they have a different statute that covers age discrimination. And if the court is to rule otherwise, there's a lot of judicial questions that remain open. For example, do you have a right to a jury trial if you're proceeding under an older women theory? Or does the district court have to decide what is the primary statute under which this claim arises? Does the person get compensatory damages or do they get liquidated damages? And they get attorney's fees. It's a sex discrimination claim. It is not an age discrimination claim. But who? The question? It is a sex. There's no new law that has to be done. It's all you answer the question the same way you answer for any other sex discrimination claim. Yeah, I think at first blush that makes sense, Your Honor. But then I think you have to look at the practical impact that this will have on the district courts when they're trying to determine what is the primary statute that this claim falls under. But you said it's sex. And so it's Title VII, sex. But I don't want to argue with you about this the whole time. But it's already been — it's an evidentiary point, not a legal claim. Well, I think that — So then it's not any novel. It's not anything novel that's happening. I think it is very novel, Your Honor. And, again, just to give an example of what the district court would have to deal with here if it is a sex plus age claim, TVA as a federal agency is immune from jury trials and age claims. So there would be a jury trial where a federal agency would otherwise be immune from a jury trial. So there are key differences in the statute. Counsel, it seems to me your principal argument is not that we need to get into whether to recognize this sort of dual claim. It's that very much what we were discussing with Mr. Wade, that he accepted this going to the jury, not just that he had his objections overruled or never addressed, that he accepted that the language on age should come out. And one of the problems with that, it may well be what everybody had in mind, is that that left it for the jury to decide what to make of age as a separate category. And you get the one juror who, as it all shook out, was basically told you're making too much of it, being told that through the Allen charge and in other ways, perhaps, by fellow jurors. So walk me through, why is it fair to say, which I think you are arguing, that this issue was basically that the jury needed to be told about both of these in some way, was basically taken off the table by plaintiff's counsel, and that he accepted that the jury did not have to be told that. Sort of walk me through that. He did have the instruction, P14, properly filed in the way it's done in the Northern District for Judge Biggers. He did raise it, as you pointed out earlier. So when does he lose that instruction as an issue in your mind? I think that he loses it at several points. I think to back up, we don't even get to that point because this claim wasn't mentioned in the pretrial order, either as a matter of law or a matter of fact. And then when he loses it— Was that pretrial order done, I suppose, after the separation of the age discrimination as a judge tried matter? It doesn't show up on the record, Your Honor, but it was emailed to the court before the ruling, and then the court entered the pretrial order after that ruling. But there was no motion to amend the pretrial order. Okay. So keep going on. Yes, Your Honor. And I say the first time that the plaintiff waived the instruction is when she did not raise it at the pretrial conference or at the charge conference itself. The second time— How would that have been raised and it wasn't done? Just it wasn't mentioned during the— It wasn't mentioned at all. They didn't ask for it at the charge conference. What about Mr. Wade's police statement that the judge never gave me a ruling on it? What's that about? Well, I think that it is incumbent upon Mr. Wade to seek a ruling if he wants a ruling on something. And I think that he waived it again when the judge gave the actual instructions. At 1109, the judge said, I instruct you now that the question of age is not for your consideration at this time. There's no objection. Page 1111. As I mentioned earlier, the only claim you're deciding at this point is whether the plaintiff was discriminated based on her gender. Again, no objection. There's multiple points where Mr. Wade could have objected and asked for a ruling, but he didn't ask for that ruling. All right. Thank you, Your Honor. But does he need a ruling if he just wants to argue that older women are treated poorly? And I know you don't think the facts support that. Yeah. But he doesn't need to argue with that point. He just needs to stand up there and argue that in his closing. And he did, Your Honor. That's at page 1133 to 1144. Mr. Wade was able to argue in closing that only younger women were eligible for promotions at TVA. So, in essence, he got an instruction on gender discrimination, and he made arguments in closing that only younger women were eligible for promotions. And so I think that no matter how the court rules on this issue, the result is the same, which is a jury verdict in TVA's favor. Except it seems to me you had one juror who was perhaps, if not persuaded, at least somewhat leaning that direction, relying on the jury argument. But this sort of may be necessary. I don't know. This way it was presented to the jury made most of the jurors think we can't talk in those terms, not that we're barred from talking about, but we can't decide it in those terms. And that seems to me the practical problem, not saying there's any legal error here or not. That's for us to decide. But practically speaking, a lot of jurors thought we can't agree with what Mr. Wade was arguing. It seems to me that he argued age, and this one juror picked up on it, and the others are telling him or her, I guess it was, you're all messed up. You're talking about age, and we're not supposed to be thinking about age. And that's sort of how this played out. Yes, based on the limiting instruction that Mr. Wade agreed should be given to the jury. But that's not true. Even with the limiting instruction, the foreman is wrong that they can't take into account the age of the woman and whether or not they're treating older women differently. They could take into that account. So the foreman's giving wrong information based upon his, I think it's his, understanding of the charge to the other juror and then going to complain about the other juror when it's the foreman that's wrong. I don't read the record that way, Your Honor. I read the record as the forewoman was saying that the judge has instructed us we can't consider age and we need to follow his instructions. And again, that was an instruction that Mr. Wade agreed to. But you could consider the evidence that older women couldn't get promotions. That was argued to the jury. They were allowed to consider that. And that's not against the instructions. And I think that's the point, Your Honor. They could have still held that way based on the instructions that were given. No, but the poor person is chastising the juror, and we know that. We don't normally know what's going on, but we do know in this case. I don't. And then the judge compounds it by like, y'all get this verdict done. Get this verdict done. Two dynamite charges in 20-something minutes. I mean, that is highly unusual. Your Honor, I think that, of course, these cases that go into the Allen charge, the cases are decided on a case-by-case basis based on the totality of the circumstances. You have to look at the first Allen charge, which the jury asked for. They said they sent back a written question to the judge that says what happens if we can't reach a verdict. And the judge said I maybe should give them an Allen instruction. And plaintiff's counsel does not raise any objection to the giving of an Allen instruction. The jury comes out, and the judge says you don't have to reach a verdict. So, to me, that's more curative than coercive because he's telling the jury you don't have to reach a verdict. When he first sent them out, he said you've got to be unanimous. Go back. And so, to me, the Allen charge fixes the situation by saying, look, you guys don't have to reach a verdict, but I'm going to give you the Allen charge. And there's no objection to the Allen charge at that time. In that, and I would point the Court on that point to the Brooks v. Bay State case, which is cited in our brief. And in that case, the Court noted that the Allen charge helped against the coercion because it told the jurors you don't have to reach a verdict. Don't yield your conscientious convictions. You don't have to reach a verdict. So, that first one may not be objectionable, but calling them back 15 minutes later to say would it be possible, that's where the, perhaps it was an impatient move. Perhaps not. I don't want to characterize it. That's where the error crept in. Have you ever seen, what case has a 15-minute break between calling the jury back for a second Allen charge in our case law? Your Honor, I did not see a case like that. But, again, based on the totality of the circumstances, I don't think it was coercive here. And as to the, when the judge gave the second charge, Mr. Wade never said, it's too soon, Your Honor, you shouldn't give a second charge. That was not the basis of the objection. The basis of the objection is that the juror is being singled out because the jurors were pulled. Well, that was plaintiff's counsel's own decision to pull the jurors, so certainly he can't pull them and then claim error based on that. And I will also note that before the judge gave the second Allen charge, he announced, I'm going to give them another Allen charge. And plaintiff's counsel did not respond to that announcement, did not say you shouldn't give them a second one. And also the record shows that before the judge gave that Allen charge, it first asked the jury if it made any progress. And that's when the forewoman said, I think one of us is confused, Your Honor, about the instructions, which in my mind indicates that some progress is being made. And then the judge goes on to ask the jurors, can you reach a verdict or not? One says, I don't think so. The other one says, I'm not sure. And the other one says, probably, maybe. The jury is not deadlocked at this point. This is much different than the Fossler case, the primary case at the appellant's site, where the jury said three separate times, we are deadlocked. We cannot make a decision. The jury never said they were deadlocked. The court asked them if they wanted some dinner and told them to go back and gave them the additional Allen charge. Is it true that the court said the dinner will take an hour, we could be here five minutes, or we could be here three weeks or whatever? Is it really true that the court made some kind of comment like that at the time of the dinner being ordered? I don't think that's in the record, Your Honor. I think the judge said we can get dinner. That's not in the record, so he's arguing that's extra record? Yeah. And I don't recall that happening. I think there may have been some comment about how long it would take dinner to come in, but it wasn't you guys are going to have to wait forever. It said we can call in supper if you want, and there was no indication that the jury asked for supper. Was there ever any comment similar to you guys could get this done in five minutes or we could be here forever? I do not think that's in the record, Your Honor. I don't have it right in front of me, but from my preparation today and my participation in the courtroom, I do not think that's in the record. Would it be a highly unusual comment if that were in the record? I don't – again, I don't think it is in the record, but if the judge said you only have five minutes left? You could get this done in five minutes or you could be here forever. If a court said that after they'd given two Allen charges, that would be a real problem, wouldn't it? I don't think so in this case, Your Honor, because, again, the jury never noted that they were deadlocked. This was supposed to be a four-day trial, and we ended early. The jury could have come back the next day. So as long as the jury hasn't said it's deadlocked, the judge can bring them in every ten minutes and say some other comment if they want? I'm not saying that happened here, but I'm trying to test your proposition that it's all the most important thing, that the jury didn't say they were deadlocked. Well, I think the reason that that's important is because when the jury says we're deadlocked, we can't reach a decision, that is coercive to say, well, I want you to do it anyway, even though you told me you couldn't. There was no indication that the jury was deadlocked or that it wouldn't be able to reach a decision. Well, can it be coercive even if we don't know whether the jury is deadlocked or not? Is there a point at which the court could take actions that would be coercive before there's knowledge of the deadlock? Or do you say that bright-line rule, unless you know there's deadlock, there's nothing you can do that's reversible in this context? I think in the context of an Allen charge, there really are not any bright-line rules, Your Honor. I think you have to, again, look at the totality of the circumstances. And here, before the judge gave the second instruction and inquired as to whether the jury had made progress, let's say the jury said there's no progress, we can't possibly reach a verdict tonight, then maybe it would have been different. But the indication of the record was progress was being made. And the Allen charge itself told the jury you don't have to reach a decision, don't yield your conscientious conviction, but try to reach a verdict if you can. Can you talk about the part about the juror being admonished by the court? Yeah. That's troubling, too. Your Honor, I respectfully disagree. You don't think that's troubling at some level? I mean, I'm not saying it's reversible error, but it's not troubling at all? I think when I was there, it was not because the juror was laughing while the judge was giving its Allen instruction. I think that a judge has wide discretion to govern its courtroom. And if somebody is laughing when the parties have spent two days on a trial and we can't reach a verdict when somebody is laughing, I don't think it's inappropriate for a judge to ask somebody to stop laughing while he is delivering his Allen charge. She was laughing so hard that it interrupted the judge's Allen charge. And the record shows he just stopped briefly to say this is not funny, and then he continued with the Allen charge. He didn't admonish her at length, and it was just him stopping and looking to see why is somebody laughing. And we didn't ever establish why she was laughing. I mean, it could be very much exasperated laughter, like this thing is going to be railroaded and I have to go along even though I don't want to, and the judge is going to make sure that happens. It's, you know, an exasperated, nervous laughter, not a, we don't know the basis of the laughter. We have no idea. We know that she's in the corner. All we know is that she apologized on the record and said, yes, it's not funny, I'm sorry, Your Honor. That's, I can tell you what I think happened from being there, but Your Honors have the record. And so, yes, it's not clear from the record. And the last question I wanted to address before my time is up is what result here. There's not sufficient evidence in the record to find anything else than what the jury already found, which is no gender discrimination. The judge found no age discrimination. Zero plus zero equals zero. There wasn't sufficient evidence to have a verdict in favor of the plaintiff in any event, so we would ask that the jury's verdict be affirmed. Unless the Court has any other questions, my time is up. Thank you. Thank you. Your Honor, if the Court please, when she says these comments were not in the record, let me refer Your Honor to page 1144 of the record, and it puts exactly the context of it and exactly how this, when the reporter recorded laughing, comes up. Beginning on line 17, the Court says he's done his allen charge, or he started an allen charge. I'd like to ask you to retire again, deliberate some more, with the end of reaching a verdict. If you can do so without any violence. Then the court reporter records Ms. Clayton, that's the dissenting juror, laughing. That's the court reporter's remark. The Court, to your own conscience, and after you, this is not funny. He's directing that to the juror. Then Ms. Clayton, the juror, I know it's not funny, Your Honor. The Court, and if you would like some food to be brought in to you, you can do that. As I said, it takes about an hour for us to get that done. And so if you don't want any food, then let us know. But I'd like for you to retire again in view of what you said that some of you, that you possibly could reach a verdict. And another few minutes or so spent here would possibly save days and hundreds, many hours of work, as you can imagine, by the people who presented the case to you who would have to do it again. So retire to the jury room and let me know what you feel about the food. So that's exactly what happened, Your Honor. And when the juror gets corrected, when the foreman points out that she's the one that's causing the problem because she's not following the jury instruction, and then the court does that in charge and corrects her, the pressure is all on her. I mean, I don't see how you could reach any other conclusion. She's not an innocent there. She started laughing when the court was speaking to the jurors. I'm not sure how we react, and counsel probably are tempted at times to laugh at some of our questions, but the courts don't take that very well. And so it seems to me this was a very brief statement. I mean, tone of voice, whatever, would make some difference, but a very brief statement by Judge Biggers that seemed entirely appropriate. Admonish was a nice word for you to use. I think I would have used it too in your shoes, but I don't know if that was an admonishment. It was saying this isn't funny. So, I mean, you got it, and I understand why you're using it, but it doesn't seem to me it adds much to your basic case that this is, through a variety of circumstances, too much pressure on a single juror. But that particular part she brought on herself. Well, Your Honor, all I can, I mean, as I say, I'm hard of hearing. Your Honor can certainly take notice of that. I'm hard of hearing, but I didn't hear it. I just didn't hear it. And I know the court report recorded laughing. I don't know. The judge might have heard it. The court report heard it. That's the way the judge took it. And it says violence, so I took it that she probably had some reaction to his use of the word violence because that's what he just said is violence. But then when you remind them, if it's 7 o'clock at night and you're reminding them that, well, you can either have food in an hour, that would be 8 o'clock, or you can do without food, and those are the only alternatives, and we're dealing with a juror here who has just been admonished, I don't see how that could be anything other than pressure on the juror. Your Honor, when she made the comment that we didn't object when the judge was out instructing the jury and he said there's no, you don't decide age, that's in effect what he said, we don't object, you can't object to the jury's charge. When the court's charging the jury, that would be contempt of court. We've had a jury instruction conference, he instructs them, the procedure's supposed to be we're supposed to go back after he's charged the jury and ask them under Rule 51 to get objections to the charge, but we can't interrupt the court and say, no, Your Honor, you're telling the jury all wrong. I couldn't do that. We'd already made, we just got through making objections in chambers. There are five times in the record where we discussed this with the court about this theory. It wasn't just in the jury instruction conference. It was when they moved for a directed verdict. It was back when a plaintiff was testifying. It was when we made our response to the motion to strike the jury to man. As a fact, it's earlier in the trial before we went into the jury instruction conference. The court was alerted that that was our theory on five different occasions. I don't know how many more times to do it. And I don't mean to belabor this, Your Honor, but I just, if a judge says that age is not going to the jury and the judge says, thank you, I'll see you in court or whatever, I'm not going to say, well, Your Honor, I'm trying to count a man there. I have to show some respect for the court, and I feel like I've made it clear to him that we wanted that instruction. Can you tell me, was there some sort of holiday coming up, or is this a long weekend, or what's the urgency that everybody's staying late on this verdict? Is that the custom and practice of the court? This is not in the record, but Judge Bigger's in a hurry. I don't know why. I don't know why. Well, it just seems unusual. I'm trying to get the context, the totality of the circumstance. I don't know why, but the judge was in a hurry. I don't know why that was. Okay. But it's not in the record, so I don't mean to count. Weekend, do you know that? No, ma'am. No? He was anxious to leave, but that's not in the record, so I shouldn't say that. I certainly mean no disrespect to Judge Bigger's and have a very good relationship with him and hope to continue that relationship. We have your case. I'm sorry. Thank you, Your Honor. Thank you. Thank you very much.